## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER ANDRE SHARP, | : | No. 1:09-cv-00989 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF DAUPHIN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM</u>

## May 1, 2013

This civil rights action brought pursuant to 42 U.S.C. § 1983 comes before the Court on the Report and Recommendation ("R&R") (doc. 120) of Magistrate Judge Susan E. Schwab, filed March 12, 2012, which recommends that we grant the motions for summary judgment of the several Defendants (docs. 78, 97) in their respective entireties and that judgment be entered in favor of the Defendants in this matter. The Plaintiff filed an objection (doc. 122) and supporting brief (doc. 123) and both Defendants filed briefs in support of the R&R and opposing the Plaintiff's objection (docs. 127, 128). For the reasons that follow, we shall adopt Magistrate Judge Schwab's recommended disposition in its entirety.

# I.   STANDARDS OF REVIEW

## A.   Review of Magistrate Judge's Report and Recommendation

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made.  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.  *Id.*  Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

## B.   Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   **Factual Background**[1]

This civil rights action arises from the erroneous designation of the Plaintiff as a child support obligor to a child in Dauphin County whom the Plaintiff had never met and, as it was ultimately determined, had not fathered. In his Amended Complaint, the Plaintiff asserts claims for procedural and substantive due process violations pursuant to Section 1983 against the County of Dauphin, the County of Montgomery, and Defendant Joseph Barbush, an employee with Dauphin County, arising out of child support and contempt proceedings brought against him in

---

[1] Magistrate Judge Schwab undertook an excellent and exhaustive review of the undisputed facts within her R&R at pages 2 through 26. For the sake of judicial economy, and because our review of the record reveals that Judge Schwab's factual statement is entirely accurate, we shall only summarize the most pertinent facts herein, but direct the reader to the R&R for a full factual exposition.

Dauphin County.[2] According to the Plaintiff, the Defendant Counties, through constitutionally deficient policies, and Barbush, through intentional falsification of the Plaintiff's records, identified the Plaintiff as a delinquent child support obligor in Dauphin County when, in fact, he was not the father of that child.

Plaintiff Walter Andre Sharpe, Jr. ("Sharpe" or "Plaintiff") was born Walter Andre Bazemore on December 13, 1968. At some unidentified time after his birth, the Plaintiff's mother changed his name to "Walter Andre Sharpe, Jr." Sharpe has used both names interchangeably as an adult, and has had Social Security numbers issued for both names: the Social Security number for Bazemore ending in 0262 and the Social Security number for Sharpe ending in 8822. The Plaintiff's use of inconsistent identifiers is one factor contributing to the confusion which underlies the present action.

In 1991, Sharpe was identified as a defendant in a Philadelphia County domestic relations case under the name of "Walter Bazemore" with a birth date of December 16, 1969, and a Social Security number ending in 8822. In June of 1999, that action was transferred to Montgomery County, and Sharpe ultimately visited the Montgomery County offices to make payment arrangements for that support

---

[2] On September 7, 2010, this Court issued an order which granted in part and denied in part the collective Defendants' motions to dismiss resulting in the dismissal of several individual Defendants named in the Plaintiff's Amended Complaint. As a result of that Order (doc. 46), the only remaining Defendants are Dauphin and Montgomery County and Defendant Barbush.

obligation. When Sharpe noticed that his name was erroneously listed as Bazemore in the Montgomery County case, he spoke with Montgomery County employee Michelle Smith and identified himself under the name Walter Andre Sharpe, presenting his Social Security card under the same name.

On July 19, 1999, former Defendant Dorothy Masseli noted in Montgomery County's tracking system that the correct name in that proceeding was Sharpe, not Bazemore, and that the correct date of birth was December 13, 1968. These notations did not formally update the Pennsylvania Automated Child Support Enforcement System ("PACSES"), a statewide system which tracks the progress of all child support cases throughout the Commonwealth. It was not until December 27, 1999, that former Defendant Diane Smith updated Sharpe's profile in the Montgomery County case to reflect a date of birth of December 13, 1968 and changed his name from Walter Bazemore to Andre Sharpe.

In November of 1996, a child support complaint was filed in Dauphin County against an individual named Andre Sharpe, a separate individual from our Plaintiff bearing a name virtually identical to one of his interchangeable monikers. On May 26, 1998, a case was created in Dauphin County which identified the father and support obligor as "Andre Sharpe" in its system as well as in PACSES. Thereafter, on January 19, 2000, former Defendant Smith noticed that two

individuals named Andre Sharpe were listed in PACSES. After an investigation and discussion with her supervisor, she completed a process known as a CDUP,[3] which merged the two cases to ensure that this one individual did not have two separate member identification numbers within the PACSES system. The Dauphin County obligor was thus now identified as Andre Sharpe and his birthday listed as December 13, 1968. No Social Security number was listed.

On February 1, 2001, the Dauphin County court issued an order in the Dauphin County case to Plaintiff Sharpe's address ordering him to appear on March 6, 2001 and admonishing that failure to appear could result in a default paternity order. Sharpe received a copy of this Order and signed the certified mail receipt but did nothing further, believing that the notice was incorrect and that the issue would resolve itself. Sharpe failed to appear for the conference on March 6, 2001, and on April 3, 2001, the court issued an order for Sharpe to appear at an April 24, 2001 paternity trial. Sharpe does not recall receiving this notice, but it was mailed to his home address and never returned as undeliverable. Sharpe failed to appear at the April 24, 2001 hearing, and the court rescheduled the proceeding for May 29, 2001. Sharpe again failed to appear or otherwise respond, and the

---

[3] As noted by Magistrate Judge Schwab, neither party has indicated what these letters stand for.

court entered a default finding of paternity in the Dauphin County case. Following

Sharpe's failure to appear at a noticed support conference, the court entered an

order requiring Sharpe to pay monthly support and arrears.

When Sharpe failed to make payment for these obligations, contempt orders

and wage garnishments ensued. Sharpe was noticed of and failed to appear at a

contempt hearing, and the Dauphin County court entered an order finding him in

contempt, imposing a fine, and sentencing him to intermediate punishment. Wage

garnishment orders were sent to Sharpe's employer, and Sharpe initially ignored

them, assuming that they were related to the Montgomery County support matter.

On July 8, 2002, Sharpe finally reached out to the Dauphin County office by letter.

In response, Sheila Britt, an attorney with Dauphin County Domestic Relations,

told him to come to Harrisburg and identify himself as a proper party to the case.

On July 29, 2002, Sharpe did so, at which point he spoke with Defendant Barbush,

who verified his name, Social Security number, and address. Sharpe asserts that

Barbush entered information into the computer system and advised that he would

place the matter on hold pending an investigation. Although Sharpe presents no

substantiating evidence, he alleges that Barbush must have been falsifying his

records and making it appear as though he were the support obligor when he was

typing into the computer.

Sharpe reached out to his contacts at Montgomery County to advise that he would not be able to meet his support obligations as a result of the garnishment in Dauphin County. When Sharpe asked his Montgomery County contacts for help, he was told that he needed to resolve the issue with Dauphin County. Sharpe was again ordered to appear for a conference in the Dauphin County matter on April 28, 2003 and a hearing on July 1, 2003. He did not appear or otherwise respond. As a result, a bench warrant issued. Between September 10, 2003 and December 9, 2003, Sharpe was incarcerated in Montgomery County for failure to pay support obligations in that case. Sharpe was thereafter immediately transferred to Dauphin County, as a result of the warrant, where he was incarcerated until June of 2004. During his incarceration in Montgomery County, Sharpe wrote a letter to Dauphin County requesting a paternity test. He was informed that he should file a petition for genetic testing, and he did, but the petition was denied by the court. Barbush apparently advised Sharpe to appeal the order, but Sharpe failed to do so.

Following further nonpayment and another finding of contempt, Sharpe was again incarcerated in Montgomery County from August 9, 2005 through August 11, 2005 and in Dauphin County from August 11, 2005 through August 16, 2005. In September, Sharpe filed another petition for genetic testing; when his request was denied, he again failed to appeal. Although the record is unclear, it appears

that there was another contempt finding for failure to appear some time in the early part of 2006, and Sharpe was again incarcerated for several days.

According to Sharpe, he never followed up on the investigation because he believed that Barbush was handling the investigation and that the Montgomery County officials, despite their admonitions that it was not their responsibility to handle the Dauphin County dispute, would follow up with Barbush. At some point, Sharpe retained counsel, and in January of 2007, counsel petitioned the Dauphin County court to set aside or vacate the May 29, 2001 order establishing paternity by default. After a hearing and failure of the mother and child to appear, the Court vacated the May 29, 2001 order and the support orders. In November of 2007, Sharpe filed a petition in equity seeking repayment of the support paid to date. The judge denied that request, and Sharpe did not appeal.

### B.    Procedural History

As we have indicated, Sharpe commenced this action with the filing of a Complaint (doc. 1) and later an Amended Complaint (doc. 26) which charges the Defendants with procedural and substantive due process violations arising from the child support proceedings, support orders, and contempt proceedings in the Dauphin County case. On September 7, 2010, on report and recommendation of Magistrate Judge Andrew J. Smyser, the Court dismissed several Defendants and

the Plaintiff's punitive damages claims against the Counties. After a period of discovery, motions for summary judgment were filed by Defendant Montgomery County (doc. 97) and Defendants Barbush and Dauphin County (doc. 78).

**C.     Report and Recommendation**

On March 12, 2013, Judge Schwab issued a report and recommendation ("R&R") which recommends that we grant the Defendants' motions in their respective entireties and dismiss Sharpe's claims. Therein, Judge Schwab first finds that Defendant Barbush is entitled to qualified immunity because nothing in the record, despite having drawn all inferences in Sharpe's favor, establishes or tends to establish that Barbush caused or contributed to a violation of Sharpe's constitutional rights. Judge Schwab further concludes that because Sharpe has produced no evidence of a failure to train or an unconstitutional municipal policy or custom, both Dauphin and Montgomery Counties are entitled to summary judgment. Judge Schwab therefore recommends that we grant the motions in their entireties and enter summary judgment in favor of the Defendants.

**D.     Objection**

On March 26, 2013, the Plaintiff filed an Objection to the R&R (doc. 122) and supporting brief (doc. 123) which offers several arguments in opposition to Magistrate Judge Schwab's findings. Responses and opposition papers were filed by Montgomery County (docs. 124) and Defendant Barbush and Dauphin County (doc. 126) on April 9, 2013. This matter is thus ripe for our review.

## IV.  DISCUSSION

In his objection, the Plaintiff takes issue with each dispositive finding rendered by the Magistrate Judge. In considering his arguments, we turn first to the claims against Barbush before addressing the claims against the municipalities. Ultimately, we are in full agreement with the conclusions and recommendations made by Magistrate Judge Schwab and will adopt them in their entirety.

### A.  Defendant Barbush

As it pertains to Defendant Barbush, the Plaintiff asserts that a trier of fact could conclude that Barbush contributed to a constitutional violation so as to preclude summary judgment in Barbush's favor. Specifically, the Plaintiff asserts that Barbush "tampered with" and "falsified" the Plaintiff's PACSES records when they met in Harrisburg on July 29, 2002, thus making the Plaintiff appear to be the Dauphin County support obligor. After a review of the record, however, it is

apparent that the Plaintiff has put forth no evidence to support any aspect of his claims against Barbush.

A qualified immunity analysis tasks the Court to consider, first, whether a plaintiff has presented evidence that a defendant or defendants violated his or her constitutional rights and, second, whether the constitutional right violated was clearly established such that it would be clear to a reasonable official that his or her conduct was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the Plaintiff has not presented evidence from which a jury could find that Barbush violated either his procedural or his substantive due process rights, we conclude, as Judge Schwab did, that he is entitled to qualified immunity and, accordingly, summary judgment.

As it relates to the procedural due process claim, in order to make out a violation, the Plaintiff must point to evidence from which a reasonable trier of fact could conclude that Barbush deprived him of a right protected by the Constitution without an adequate opportunity to be heard to protect that right. *See LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) ("In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the liberty or property language of U.S. Const. amend. XIV. Once the court determines that the

interest is protected . . . , the question then becomes what process is due to protect it.").

Regarding the first prong, the only allegation against Barbush, supported only by Plaintiff's supposition, is that when the Plaintiff traveled to Harrisburg and met with Barbush on July 29, 2002, Barbush began typing on the computer, which Plaintiff asserts necessarily means that Barbush was "unlawfully altering the Plaintiff's identity information: thus making him appear to be the support obligor." (Doc. 123, p. 7). Magistrate Judge Schwab concluded, and our review of the record affirms, that Plaintiff has put forth no evidence to establish that Barbush made any inappropriate additions to or otherwise falsified his information on that day or at any other time, and he has offered no objective evidence to contradict Barbush's testimony that he was required to enter certain identifying information about Sharpe into the system before he could pull retrieve his file. Accordingly, there is no evidence to support the Plaintiff's claim that Barbush intentionally falsified his records in order to make him appear to be the obligor in the Dauphin County case and thus caused a deprivation of his constitutional rights.

Further, the only allegation against Barbush, relating to conduct on July 29, 2002, postdates the unequivocal date on which Plaintiff's information was merged to the Dauphin County case and the date of the default paternity finding against the

Plaintiff by more than one year, thus removing any possibility that Barbush could have been the cause of, or otherwise contributed to the issuance of, the support and contempt orders which he contends deprived him of his rights. Plaintiff offers no response to Judge Schwab's rejection of such a retroactive causation theory, and we cannot but agree that her conclusion was the correct one. There is thus no evidence before the Court from which a jury could conclude that Barbush deprived the Plaintiff of a constitutional right. *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.").

The Plaintiff's procedural due process claim fails for one additional and critical reason. As we have previously noted in dismissing the Plaintiff's claims against former Defendants Smith and Masseli, a "due process violation 'is not complete when the deprivation occurs; it is not complete unless the state fails to provide due process.' If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the Federal Courts as means to get back what he wants." *Alvin v. Suzuki*, 227 F. 3d 107, 116 (3d Cir. 2000) (quoting *Zinernon v. Burch*, 494 U.S. 113, 126 (1990)). Absent a right to control the process, a defendant cannot be held liable, as a matter of law, for a deprivation

of said right. *See Seeney v. Kavitski*, 1995 U.S. Dist. LEXIS 6869, *19 (E.D. Pa. 1995). Here, the Plaintiff had copious opportunities to participate in the paternity and support proceedings, and he concedes that he ignored most with the hope that the problem would "fix itself." More importantly, even had the Plaintiff opted to take advantage of those opportunities, Defendant Barbush had no control over those proceedings and thus cannot be held liable for whatever alleged deprivations may have arisen as a result. *See id.* For this additional reason, Barbush is entitled to qualified immunity on the procedural due process claim.

Finally, in order to prevail on his substantive due process claim against Barbush, the Plaintiff must establish that Barbush's conduct was so egregious that it can fairly "be said to be arbitrary in the constitutional sense." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). The Plaintiff *alleges* that Barbush "intentionally" and "maliciously" altered and falsified his PACSES record in order to give the false impression that he was the father and child support obligor in the Dauphin County case. However, allegations are insufficient at the summary judgment phase, and the Plaintiff must make a sufficient evidentiary showing from which a reasonable juror could conclude that this allegation is true. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (at summary judgment, "a party must present more than

just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue"). Plaintiff's contention that there "is no doubt that the defendant's actions were wrongful and intentional" is thus insufficient to meet his burden at the summary judgment stage. Our review of the record, like Judge Schwab's, reveals no objective evidence to support this assertion. Accordingly, summary judgment is appropriately entered in favor of Barbush on the substantive due process claim as well.

### B.    Municipal Defendants

We turn next to the Plaintiff's Section 1983 claims as they pertain to the Defendant municipalities. As Judge Schwab correctly observed, and this Court has oft repeated, a municipality cannot be constitutionally liable under Section 1983 on a *respondeat superior* theory. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court held in *Monell* that a municipality is only liable when the plaintiff can establish that the municipality itself, through its formal or informal adoption or implementation of a policy, regulation or decision actually caused the alleged constitutional transgression. *Id.* at 691. A "policy" is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict . . . [and] a custom is an act that has not been formally approved by an appropriate

decisionmaker but that is so widespread as to have the force of law." *Natale v.*

*Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). A

municipality can also be held liable in limited circumstances for a failure to train

its employees where that failure amounts to a deliberate indifference toward the

rights of individuals protected by the Constitution. *See Carter v. City of Phila.*, 181

F.3d 339, 357 (3d Cir. 1999).

Turning first to the failure to train claim, the Plaintiff argues that neither

County Defendant has put forth evidence establishing that it had mechanisms in

place to prevent falsification of PACSES records, thus saving his *Monell* claim.

(Doc. 123, p. 9). Not only is that allegation patently at odds with uncontroverted

record evidence describing the scope of the training provided, it is insufficient to

support the Plaintiff's burden of proof. In the context of a failure to train claim,

*Monell* and its progeny require a definite and objective showing by the plaintiff

that a specific, alternative training exists which would have reduced the risk of a

constitutional violation. *See Herman v. Clearfield Cnty.*, 836 F. Supp. 1178, 1187

(W.D. Pa. Oct. 12, 1993) (plaintiff must "identify specific training not provided

that could reasonably be expected to prevent [the harm] . . . and demonstrate that

the risk reduction associated with the proposed training is so great and so obvious

that the failure of those responsible for the content of the training program to

provide it can reasonably be attributed to a deliberate indifference to whether [the injury occurs.]"). The Plaintiff has made no evidentiary showing to that end, and accordingly, the municipal Defendants are entitled to summary judgment.

Similarly, the Plaintiff has failed to put any evidence of an unconstitutional policy or custom before the Court which supports *Monell* liability. Nothing of record permits even a generous inference that a decisionmaker with either County formally or informally adopted a policy that was the moving force behind the Plaintiff's injury or that falsification of the PACSES was so prevalent, whether or not approved by decisionmakers, so as to have the force of law. *See Natale*, 318 F.3d at 583-84. Plaintiff's bare assertions of municipal liability and conclusory allegations of constitutional misconduct, absent any substantiating evidence of record, simply cannot survive summary judgment. For all of these reasons, we will adopt Judge Schwab's R&R with regard to the *Monell* liability claims against both municipal Defendants.

## V.    CONCLUSION

Plaintiff has asserted causes of action based on selective facts that are facially alluring, and we are not unsympathetic to his plight. But in the end, its severity was largely one of his own making, the result of years of inconsistency in participating or appearing for the Dauphin County child support proceeding and,

most often, ignoring its existence altogether. Despite his ordeal, the Plaintiff simply has not presented evidence from which a trier of fact could find a constitutional violation and viable Section 1983 claim. Having repeatedly failed to avail himself of the legal recourses and processes that would have abated this unfortunate panoply, Plaintiff now seeks federal relief that we cannot afford him. For these reasons, we will adopt the thorough and well reasoned Report and Recommendation of Magistrate Judge Schwab in its entirety and grant the Defendants' motions for summary judgment, closing this case. An appropriate order shall issue.